**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JOHNNY FRANCISCO RODRIGUEZ, | No. ED CV 16-1639-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 27, 2016, seeking review of the Commissioner's[1] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 19, 2016, and September 21, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on March 23, 2017, that addresses their positions concerning the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on February 23, 1986. [Administrative Record ("AR") at 297, 315.] He has past relevant work experience as a construction laborer and a warehouse worker. [AR at 57, 77.]

On January 25, 2012, plaintiff filed an application for a period of disability and DIB, and on August 21, 2013, he filed an application for SSI payments, alleging that he has been unable to work since July 2, 2007. [AR at 26, 297-303, 315-24.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 26, 119-20.] Hearings were held on October 16, 2013, May 19, 2014, and January 28, 2015. [AR at 26.] Plaintiff appeared represented by an attorney at the first and third hearings, and testified on his own behalf. [AR at 45-59, 60-68, 69-82.] A different vocational expert ("VE") also testified at each of the hearings. [AR at 57-59, 63-67, 76-78.] A medical expert ("ME") testified at the final hearing. [AR at 72-76.] On February 5, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from July 2, 2007, the alleged onset date, through February 5, 2015, the date of the decision. [AR at 26-38.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18.] When the Appeals Council denied plaintiff's request for review on May 23, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

...

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 2, 2007, the alleged onset date.[2] [AR at 29.] At step two, the ALJ concluded that plaintiff has

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2009. [AR at 29.]

4

the medically determinable impairments of degenerative disk disease of the lumbar spine; left shoulder impingement; depressive disorder; and anxiety. [Id.] The ALJ also determined that plaintiff "does not have an impairment or a combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months" and, therefore, "does not have a severe impairment or combination of impairments." [Id.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of July 2, 2007, through February 5, 2015, the date of the decision. [AR at 38.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he found at step two that plaintiff was not disabled because the evidence did not show that plaintiff's impairments significantly limited his ability to perform basic work activities. [JS at 11 (citing AR at 38).] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    STEP TWO LEGAL STANDARD**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 404.1528. "Signs," by contrast, "are anatomical, physiological, or

psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. [See AR at 29 (citing Soc. Sec. Ruling ("SSR")[3] 85-28).]

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

6

687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

**B.    ANALYSIS**

Here, although the ALJ found that plaintiff has the medically determinable impairments of degenerative disk disease of the lumbar spine, left shoulder impingement, depressive disorder, and anxiety, he concluded that plaintiff does not have a severe impairment or combination of impairments because his impairments have not significantly limited plaintiff's ability to perform basic work-related activities for twelve consecutive months. [AR at 29.] The ALJ gave a number of reasons for this conclusion[4]: (1) plaintiff's subjective symptom allegations "are less than fully credible" because (a) plaintiff "has engaged in a somewhat normal level of daily activity and interaction"; (b) there is no evidence of muscle atrophy, which "is a common side effect of prolonged and/or chronic pain due to lack of use of a muscle in order to avoid pain"; and (c) the medical evidence does not support plaintiff's subjective symptom allegations; (2) some of the medical records "were reports prepared in the context of the adversarial workers' compensation claim system" and "physicians retained . . . in the context of workers' compensation cases are often biased and do not provide truly objective opinions"; (3) the diagnostic tests performed "showed no significant findings"; (4) the impartial medical expert, Darius Ghazi, M.D., a certified orthopedic surgeon, determined that plaintiff's impairments did not meet or equal a medical listing and that plaintiff "was able to engage in any occupation that was suitable for him"; (5) the opinions of plaintiff's treating physicians, Donald Kim, M.D., Jonathan Lee, M.D., and Max Matos, M.D., among others, were entitled to "little weight" because they were inconsistent with plaintiff's MRIs of the lumbar spine, which revealed no significant findings, and because their opinions "are

---

[4] Because several of the ALJ's stated reasons for finding that plaintiff's impairments were not severe are not supported by substantial evidence and, therefore, remand is warranted, the Court will not discuss all of the ALJ's stated reasons herein. The Court's lack of discussion of any reason given by the ALJ to find plaintiff's impairments not severe should not be construed as an indication that the reason was legally sufficient.

inconsistent with records reflecting that [plaintiff's] gait was normal, and his straight leg raising ["SLR"] test was negative bilaterally," as well as with plaintiff's ability to perform daily activities[5]; (6) the opinions of the State agency medical consultants, who determined that plaintiff had the ability to perform a range of light work, were given "little weight" because they were inconsistent with records reflecting that plaintiff's gait was normal, his SLR test was negative bilaterally, and with an MRI, which revealed no significant findings, as well as with plaintiff's ability to perform daily activities; (7) the opinions in the workers' compensation medical records that indicated plaintiff was "temporarily totally disabled," were rejected as an opinion reserved to the Commissioner, and because their opinions were in the context of the workers' compensation claim; (8) the medical evidence reflects only mild mental problems with symptoms that remained stable; and (9) the opinions of the State agency psychological consultants, who opined there was "insufficient evidence for a medical disposition," were given "great weight" because they were consistent with records reflecting "normal" memory, attention, and concentration, logical and coherent thoughts, and appropriate affect, as well as with plaintiff's ability to perform daily activities. [AR at 31-38.] A number of these reasons are legally insufficient and fail to support the ALJ's conclusion that plaintiff's impairments are nonsevere.

### 1.     Workers' Compensation Records

The ALJ found that the records of plaintiff's treating physicians, Dr. Kim, Dr. Lee, and Dr. Matos, were entitled to "little weight" because they were prepared "in the context of workers'

---

[5] In his decision, the ALJ noted that the opinions of plaintiff's treating physicians are inconsistent with plaintiff's "ability to perform daily activities, such as driving, taking care of his girlfriend and son, shopping in stores, paying bills, handling the finances, walking his eight-year old son to school, and spending time with others." [See, e.g., AR at 35-36 (citing plaintiff's testimony and Function Report-Adult (AR at 370-77)).] He also stated that the opinions of Dr. Ghazi, and the State agency psychological consultants -- whose opinions he gave "great weight" -- were consistent with plaintiff's ability to perform these daily activities. [See, e.g., AR at 35, 38.] An ALJ is required to consider the evidence as a whole. See Reddick, 157 F.3d at 722-23; Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). As the ALJ's reevaluation of the medical signs and laboratory findings in the record on remand may impact on his evaluation of plaintiff's subjective symptom statements, the ALJ is instructed on remand to also reevaluate plaintiff's subjective symptom statements to the extent necessary, in accordance with SSR 16-3p. [See infra note 9.]

compensation cases" and physicians retained in such cases "are often biased and do not provide truly objective opinions." [AR at 32.] The ALJ points to no evidence, however, that any of *plaintiff's* workers' compensation physicians were anything but professional in conducting their examinations and writing their reports. Moreover, it could just as easily be said that an ME, a VE, a state agency reviewing or consulting physician, and a treating physician, all of whom are compensated in some way for examining a claimant, or for reviewing the records and rendering their opinions in an action, are not "totally unbiased." An ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Lester, 81 F.3d at 832). Moreover, an ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

Furthermore, these treating providers provided relevant information regarding the severity of plaintiff's impairments. For instance, on November 7, 2007, and again on November 28, 2007, Dr. Kim opined that plaintiff should not push, pull, or lift any weight over 25 pounds, and was limited in bending and stooping [AR at 890-91, 897-98]; on July 16, 2008, Dr. Matos provided plaintiff with a cane, requested pain management authorization, noted that an October 31, 2007, MRI showed L5-S1 disc herniation, and found plaintiff temporarily totally disabled [AR at 547-48]; on August 28, 2008, Dr. Matos requested a neurological evaluation and noted plaintiff was temporarily totally disabled [AR at 554]; on October 23, 2008, Dr. Lee opined plaintiff could not engage in prolonged walking or standing, or handle more than 30 pounds [AR at 925]; on May 20, 2009, Dr. Matos noted plaintiff's "increasing difficulty with ambulation," and recommended use of a walker with a seat [AR at 584]; on July 2, 2010, Dr. Matos opined that plaintiff's medical conditions would prevent him from working [AR at 480]; on October 20, 2010, Dr. Matos indicated plaintiff was limited to working sedentary-type work only four hours per day with limited overhead work, no climbing, and no lifting, carrying, pushing, or pulling over five pounds [AR at 638]; on December 29, 2010, and March 4, 2011, Dr. Matos indicated similar findings and restrictions as his October 20, 2010, findings [AR at 649-52, 653-56]; on June 15, 2011, Dr. Matos discussed Dr.

Lee's October 23, 2008, evaluation and stated that he believed Dr. Lee had declared plaintiff "permanent and stationary prematurely and without complete review" of the case, as evidenced by Dr. Moheimani's evaluation on January 21, 2010, recommending median branch facet blocks at L4-S1 and possible radiofrequency rhizotomy, indictating plaintiff "still required active care and was not at maximum medical improvement" [AR at 515-16]; on October 11, 2011, Dr. Matos again opined plaintiff was limited to working four hours per day, lifting, carrying, pushing, and pulling five pounds, and never driving or doing overhead work [AR at 673]; on February 6, 2012, Dr. Matos provided a lumbar support and indicated the need for a cane, reiterated his October 2011, limitations, and stated that plaintiff "must be able to stand and/or sit at liberty" [AR at 1021-22]; he again reiterated those limitations and/or observations on March 7, 2012, May 2, 2012, June 29, 2012, December 7, 2012, January 11, 2013, and throughout the second half of 2013 and 2014. [AR at 679-81, 686-87, 694, 1108-09, 1100, 816, 1057, 1065-66, 1086, 1269, 1277, 1285, 1289, 1294.] On June 16, 2014, November 6, 2014, December 18, 2014, December 31, 2014, and January 15, 2015, plaintiff received trigger point injections in his left shoulder. [AR at 1252-54, 1263.]

Accordingly, the medical opinions from these three treating workers' compensation doctors indicate that plaintiff's impairments had, at the very least, more than a minimal effect on plaintiff's ability to work. In the absence of <u>specific</u> evidence showing bias, the ALJ's questioning of plaintiff's doctors' motives for evaluating plaintiff's physical and/or mental health conditions in the way that they did was not a specific or legitimate reason to discount the opinions of plaintiff's workers' compensation physicians regarding the severity of plaintiff's impairments.

### 2. Medical Opinions Inconsistent with Treatment Records

The ALJ determined that the opinions of plaintiff's treating physicians were entitled to "little weight" because they were inconsistent with plaintiff's diagnostic test results that "showed no significant findings," including plaintiff's MRIs of the lumbar spine, records reflecting that plaintiff's gait was normal and his SLR test was negative bilaterally, and with plaintiff's ability to perform daily activities. [AR at 33-34 (citing AR at 1048).]

### a.     MRI Findings

The ALJ noted that an MRI of the lumbar spine taken on October 31, 2007, "revealed no significant findings." [AR at 33-34 (citing AR at 746).] A review of that MRI report, however, reflects a "3.0 mm, dorsal midline disk protrusion at L5-S1," and "degenerative facet hypertrophy from L3 to S1 without significant spinal stenosis." [AR at 746.] Additionally, Dr. Matos commented that this MRI indicated L5-S1 disc herniation and diagnosed lumbosacral sciatica. [AR at 544.] The ALJ also noted that a lumbar spine MRI taken on March 29, 2012, "revealed 1-2 mm central disk bulge [at L5-S1], otherwise, the study was normal without spondylolisthesis."[6] [AR at 134 (citing AR at 750-51).] The ALJ fails to explain, however, how the treating physicians' opinions regarding plaintiff's limitations are inconsistent (if they are) with any of these MRI results.

Additionally, the ALJ failed to note that on August 13, 2012, Dr. Matos stated that he "respectfully disagreed" with the interpretation of the MRI study from March 29, 2012, and stated that he believed that the MRI showed a "4 to 5.89 mm disc towards the right of the midline which is on the axial views compressing the right S1 nerve root." [AR at 1027.] He stated that by his measurement, "[t]here is significant compression." [Id.] Dr. Matos also stated that the "findings of the MRI are concordant with the patient's symptoms and physical examination." [Id.] An ALJ must explain why "significant, probative evidence has been rejected." See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). Accordingly, the ALJ's failure to discuss Dr. Matos' interpretation of the March 29, 2012, MRI results was error.

### b.     Normal Gait and Negative SLR

The ALJ stated that the treating physicians' opinions were inconsistent with the records reflecting that plaintiff's gait was normal and his SLR was negative bilaterally. [See, e.g., AR at 34 & 35 (citing AR at 1048).] The one record repeatedly relied on by the ALJ for this proposition --

---

[6] The ALJ failed to mention an MRI done on August 21, 2008, that also notes at the L5-S1 level "very mild bilateral facet degenerative change and prominence of ligamenium flavum[,] . . . diffuse disc dessication, and a small broad-based posterior disc protrusion measuring approximately 2 mm in size," with very mild bilateral foraminal narrowing. [AR at 747.]

11

AR at 1048 -- is a February 13, 2013, report by A. Michael Moheimani, M.D., a qualified medical examiner. However, although on that date Dr. Moheimani noted a normal gait and negative SLR bilaterally, he also noted *reduced* flexion and extension of the lumbar spine, and declined to make any treatment recommendations without having first reviewed plaintiff's most recent lumbar MRI. [AR at 1047-48.] The ALJ's reliance on that single record to support his rejection of the treating physicians' opinions was improper, as was his selective reliance on only certain evidence *in* that record.[7] Additionally, notwithstanding Dr. Moheimani's findings on February 13, 2013, this one record -- as well as the two or three others cited in passing by the ALJ -- is directly in conflict with a significant number of other records that do reflect plaintiff's antalgic or otherwise abnormal gait, and positive SLR, either unilaterally or bilaterally. For instance:

- March 5, 2008: positive bilateral SLR in seated and supine positions, and right antalgic gait [AR at 492-93];
- April 16, 2008: mildly antalgic gait [AR at 700];
- May 6, 2008: positive bilateral SLR [AR at 528-29];
- August 28, 2008: ambulation with a cane and an antalgic gait, and limited range of motion [AR at 553];
- October 23, 2008: limited range of motion and antalgic gait [AR at 922];
- December 24, 2008: positive bilateral SLR [AR at 932];
- January 21, 2009: reduced range of motion of the lumbar spine, supine SLR positive

---

[7] Defendant points to other records cited by the ALJ where plaintiff's SLR was found to be negative [JS at 18-19 (citing AR at 31)]: a January 16, 2008, examination note that the ALJ also stated showed "no decreased range of motion of the lumbar spine," but that actually showed a significantly reduced range of lumbar motion on flexion and extension [AR at 877], and also reflected L5-S1 degenerative disc disease with 3 mm bulge and right lower extremity radiculopathy [AR at 877-78]; and a December 5, 2007, examination note that indicated the same additional findings. [AR at 886-87.] Although defendant and the ALJ also asserted that in January 2009 another examination showed negative SLR bilaterally, that plaintiff walked with a normal gait, and that he performed a heel and toe walk test without difficulty [JS at 19 (citing AR at 31)], the cited record actually shows *positive supine* straight leg raising bilaterally, and also that plaintiff had "great difficulty" moving about the room and lying down on the table and getting up, and that the range of motion of his right hip was painful. [AR at 1137-38.] Thus, the ALJ (and defendant) selectively cited to the benign findings in those selected records while completely ignoring other, significant findings.

12

1     bilaterally, painful range of motion of right hip [AR at 1137];

2 • February 17, 2009: positive SLR on right more than left [AR at 572-73];

3 • May 20, 2009: gait was "quite antalgic" despite using a cane, and range of motion testing
4     was "deferred secondary to pain" [AR at 584];

5 • July 2, 2009: gait antalgic when not using his single-point cane, and painful and limited
6     range of motion [AR at 592];

7 • July 9, 2009: gait was possible with a cane [AR at 1346];

8 • August 14, 2009: plaintiff antalgic in sitting, standing, and walking positions [AR at 598];

9 • December 17, 2009: plaintiff antalgic in sitting, standing, and walking positions, limited
10     range of motion, and positive SLR at 45 degrees [AR at 613];

11 • January 18, 2010: antalgic gait with cane, decreased range of motion [AR at 619];

12 • January 21, 2010: positive SLR in the supine position [AR at 1137-38];

13 • March 11, 2010: antalgic while sitting, standing, and walking, and limited and painful
14     lumbar range of motion [AR at 623];

15 • July 12, 2010: bilateral antalgic gait with left shoulder slightly higher than the right and neck
16     slightly tilted to the left [AR at 500];

17 • October 20, 2010: positive SLR and decreased range of motion, difficulty standing, sitting,
18     and rising from sitting, and an antalgic gait [AR at 640-42];

19 • October 11, 2011: difficulty rising from sitting, a high left shoulder, and antalgic gait [AR
20     at 674];

21 • February 6, 2012: positive bilateral SLR and decreased lumbar range of motion [AR at
22     1018];

23 • March 7, 2012: difficulty rising from sitting, and an antalgic gait [AR at 679-81];

24 • May 2, 2012: difficulty standing, sitting, and rising from sitting, an antalgic gait favoring the
25     left leg, and gingerly movements [AR at 686-87];

26 • June 29, 2012: same as May 2, 2012 [AR at 694];

27 • August 13, 2012: Dr. Matos disagreed with reading of March 29, 2012, MRI and instead
28     found a "4 to 5.89 mm disc towards the right of the midline which is on the axial views

1      compressing the right S1 nerve root," and stating that by his measurement, "[t]here is
2      significant compression" and plaintiff "has persistent severe symptoms concordant with the
3      MRI findings" [AR at 1027-28];
4  •   October 29, 2012: difficulty standing, sitting, and rising from sitting, an antalgic gait, and
5      stiff and gingerly movements [AR at 1118]; and
6  •   December 7, 2012: stiff movements. [AR at 1100.]

In short, it is clear that the ALJ selectively relied on only certain "positive" evidence in the records that he cited, and completely ignored evidence in those and other medical records reflecting signs and laboratory findings showing more severe impairment or limitations. Accordingly, the ALJ's finding that the opinions of plaintiff's treating physicians were inconsistent with the records reflecting that plaintiff's gait was normal and his SLR was negative bilaterally, was not supported by substantial evidence.

### 3.     Dr. Ghazi's Opinion

The ALJ gave "great weight" to the opinion of Dr. Ghazi, who opined that plaintiff had no functional limitations. [AR at 35.] Indeed, Dr. Ghazi also relied on the lack of any "objective findings of any serious injury" to plaintiff's back, and found that plaintiff's symptoms were "basically out of proportion with the physical findings and imaging findings," without any discussion of the many records reflecting limitations in range of motion, positive SLR, antalgic gait, and other things. The ALJ gave "great weight" to Dr. Ghazi's opinion because Dr. Ghazi's opinions were consistent with the records reflecting that plaintiff's MRI examinations revealed no significant findings, with records reflecting that plaintiff's gait was normal and his SLR was negative bilaterally, and with plaintiff's "ability to perform daily activities, such as driving, taking care of his girlfriend and son, shopping in stores, paying bills, handling the finances, walking his eight-year old son to school, and spending time with others." [AR at 35 (citations omitted).]

Because, as discussed above, the ALJ's findings regarding plaintiff's MRI reports, and the evidence reflecting plaintiff's test results and other clinical diagnostic findings, were not supported by substantial evidence, the weight he gave to Dr. Ghazi's opinion based on these same reasons

was also not supported by substantial evidence.

### 4. Mental Health Issues

In a psychological evaluation on June 3, 2008, Loren Green, Ph.D., observed that plaintiff was cooperative but made little eye contact, had slow interpersonal mannerisms, leaned forward in his chair, was in observable physical discomfort, appeared to experience mental or physical fatigue during the interview, spoke softly, had a limited range of affect and depressed mood, became distressed when discussing his stressors, and had a preoccupation with his pain. [AR at 722-37.] Dr. Green found no evidence of malingering or exaggeration and diagnosed plaintiff with Adjustment Disorder with Mixed Anxiety & Depressed Mood. [AR at 733.] Several subsequent progress notes found that plaintiff's affect was restricted, his mood was sad and irritable, and/or he was depressed and anxious. [AR at 738-45.] On October 20, 2010, Ted Tribble, Psy.D., opined plaintiff was mentally disabled as of that date due to depression and anxiety with symptoms of depressed mood, fatigue, insomnia, irritability, anxiety, tension, and impaired memory and concentration. [AR at 483.]

The ALJ noted Dr. Green's findings and diagnoses, but stated, among other things, that "[d]espite these diagnoses, [plaintiff's] ability to focus his attention and concentrate were normal," there "was no evidence of any distraction or confusion," "his mood was calm and pleasant," his affect was appropriate, and Dr. Green "indicated that [plaintiff's] mental conditions would improve if he were to return to work." [AR at 37 (citing AR at 706-34).] The ALJ also mentioned a March 11, 2010, examination, where plaintiff "was found to have depression and anxiety," and was prescribed medications. [Id. (citing AR at 935-40).] He also referenced Dr. Tribble's October 20, 2010, examination, and noted that although plaintiff had been diagnosed with major depression, single episode, and generalized anxiety disorder, Dr. Tribble's report also noted that plaintiff's affect was appropriate and plaintiff admitted his Wellbutrin was helping. [Id. (citations omitted).] The ALJ then stated that between October 20, 2010, and June 20, 2012, plaintiff's "mental symptoms remained stable," as at seven examinations between those dates, plaintiff's "memory, attention, and concentration were normal." [Id. (citations omitted).]

The ALJ gave great weight to the State agency psychological consultants "who opined that there was insufficient evidence for a medical disposition," because their opinions "are consistent with records reflecting that [plaintiff's] memory, attention, and concentration were normal." [AR at 37-38 (citing AR at 88, 98-99).] He found that their opinions were also consistent with records reflecting that plaintiff's thoughts were logical and coherent, and his affect appropriate [AR at 38 (citing AR at 941)], as well as with plaintiff's "ability to perform daily activities, such as driving, taking care of his girlfriend and son, shopping in stores, paying bills, handling the finances, walking his eight-year old son to school, and spending time with others." [Id. (citations omitted).]

As with the records relating to plaintiff's physical impairments, the ALJ appears to have selectively considered only those portions of the mental health records and reports that reflect positive findings (e.g., normal memory, attention, and concentration; logical and coherent thoughts; and appropriate affect), and ignored those portions of the reports that reflect depression, anxiety, fatigue, irritability, feelings of helplessness, minimal stress management, minimal pain management, and minimal anger management. [See AR at 738-45.] In addition, he appears to have substituted his lay opinion (in this case that normal memory, attention, and concentration, logical and coherent thought processes, and appropriate affect are inconsistent with a severe mental impairment) for the medical opinions of the mental health professionals. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations, and citations omitted). In any event, what is relevant to the disability determination here is the severity of the mental impairments and resulting limitations.

The ALJ on remand must reassess the severity of plaintiff's mental health impairments.

### 5. Conclusion

An ALJ must consider all of the relevant evidence in the record and may not point to only

those portions of the record that bolster his findings. See Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). Thus, an ALJ may not cherry-pick evidence to support a conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan, 246 F.3d at 1207 (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment."). That is exactly what the ALJ did here when he repeatedly relied on selective portions of less than a handful of records that showed normal gait and/or negative bilateral SLR test results to discount the opinions of plaintiff's treating physicians, despite the abundance of evidence in the record showing just the opposite, and instead gave great weight to the medical expert, who -- like the ALJ -- appeared to ignore the plethora of evidence reflecting antalgic gait and positive SLR test results, as well as other signs and diagnostic findings relating to the severity of plaintiff's impairments.

In short, substantial evidence does not support the ALJ's conclusion that plaintiff's medically determinable impairments fail to meet the step two de minimis threshold of severity. Remand is warranted on this issue.[8]

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan,

---

[8] The Court need not address whether the ALJ erred when he considered plaintiff's subjective symptom testimony, or the evidence concerning plaintiff's shoulder impairment, because given the error in his determination that plaintiff's medically determinable impairments of degenerative disk disease of the lumbar spine, left shoulder impingement, depressive disorder, and anxiety -- singly or in combination-- were not severe, the ALJ on remand must also reconsider the severity of all of plaintiff's medically determinable impairments, as well as plaintiff's subjective symptom testimony, in light of the entire record.

888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to properly consider the evidence relating to the severity of plaintiff's physical and mental impairments at step two, remand is appropriate to allow the Commissioner to continue the sequential evaluation process starting with the severity of plaintiff's impairments at step two. In assessing the medical opinion evidence of all of plaintiff's providers, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Additionally, in considering the severity of plaintiff's impairments at step two and, if warranted, throughout the five-step evaluation process, the ALJ on remand, in accordance with SSR 16-3p,[9] shall reassess plaintiff's

---

[9] On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's 2015 decision was issued before March 28, 2016, when
(continued...)

subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 31, 2017

                                              PAUL L. ABRAMS
                              UNITED STATES MAGISTRATE JUDGE

---

[9](...continued)
SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. However, given the status of this action, the Court need not resolve the retroactivity issue herein. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.